# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
at _10_ O'clock & _01_ min _A_ M
Date _9-1-06_

United States Bankruptcy Court
Savannah, Georgia

In the matter of:                    )
                                     )          Chapter 13 Case
MILDRED A. HARVEY                    )
                                     )          Number 02-40093
              *Debtor*               )
                                     )
and                                  )
                                     )
MICHAEL WALDRON                      )
BARBARA A. WALDRON                   )          Chapter 13 Case
                                     )
                                     )          Number 04-41875
              *Debtors*              )


### MEMORANDUM AND ORDER

These two cases pose the same question: Does property acquired by a debtor after the confirmation of a Chapter 13 plan ("post-confirmation assets")[1] constitute property of the debtor's bankruptcy estate or vest in the debtor? In the Harvey case, a hearing was held on May 9, 2006. In the Waldron case, a hearing was held on August 9, 2006. After considering the evidence presented, the arguments by all parties, and applicable law, I make the following Findings of Fact and Conclusions of Law.

---

[1] Some of the holdings in this opinion may have implications for post-*petition* assets acquired pre-*confirmation*, but assets acquired in that gap period are not specifically before the Court at this time.

✎AO 72A
(Rev. 8/82)

## FINDINGS OF FACT

Mildred A. Harvey

On April 10, 2006, the Debtor filed an amended motion to approve the settlement of a personal injury claim that arose from her involvement in an automobile collision. *See* Dckt. No. 78 (April 10, 2006). It sought to pay attorney's fees and costs totaling $26,675.95, leaving a net balance of $23,324.05. The motion to approve the settlement came before the Court at a hearing held on May 9, 2006, at which time her personal injury counsel, Benjamin S. Eichholz, who had previously been appointed to serve as her counsel by order entered April 28, 2006, made a presentation for the Court in support of her recommendation that her claim be settled for the sum of $50,000.00.[2]

The Debtor's Chapter 13 Plan was confirmed on May 28, 2002. *See* Dckt. No. 21 (May 28, 2002). The Debtor's personal injuries arose out of an automobile collision that occurred on December 31, 2003. Since the personal injury claim that is the subject of the settlement arose after the confirmation of her Plan, the Debtor contends that it is post-petition property that vested in her upon confirmation, does not constitute property of the

---

[2] It should be noted that by order dated July 17, 2006, the United States District Court suspended Mr. Eichholz from practice in this district for a two-year period. However, his appointment to serve as counsel in this case, his filing for the motion of approval, and his presentation at the May 9 hearing all pre-dated the entry of that order, even though the disciplinary matter was in progress at the time. Because no final order of suspension had been ordered when the matter was taken up, I conclude that Mr. Eichholz's fee, which was requested and orally approved by the Court at the time, can and will, at the conclusion of this order, be approved for disbursement to him. The delay in the entry of this order had nothing to do with his entitlement to a fee, but rather was intertwined with the dispute between the Debtor and the Trustee as to whether some of the settlement proceeds constitute estate property. Mr. Eichholz's fee entitlement was finally determined prior to his suspension and should not be affected by the District Court's July 17, 2006 suspension order.

estate, and cannot be subject to the claims of pre-petition creditors. The Chapter 13 Trustee filed an objection opposing the Debtor retaining anything from the personal injury settlement other than undisputed exempt proceeds in the amount of $10,000.00. *See* Dckt. No. 86 (May 22, 2006). The Trustee argued that any amount above the Debtor's $10,000.00 exemption should be treated as property of the estate in this Chapter 13 case. Beneficial Mortgage Company of Georgia, a secured creditor, also filed an objection to the Debtor's amended motion. *See* Dckt. No. 84 (May 3, 2006).

The Trustee claims that the proceeds from the settlement of the Debtor's personal injury claim are "necessary to the fulfillment" of the terms of the Debtor's Chapter 13 Plan. At the time of confirmation, the Debtor's disposable income was less than the plan payment she committed to make, and the Trustee has previously filed motions to dismiss due to the Debtor's failure to timely submit her plan payments. *See* Dckt. No. 37 (October 24, 2002); Dckt. No. 42 (January 3, 2005). In addition, the Trustee asserts that because the Debtor proposes to retain the net proceeds of her personal injury settlement while paying less than a one hundred percent dividend to creditors, she is not acting in good faith.

Michael Waldron
Barbara A. Waldron

Michael and Barbara Waldron's Chapter 13 Plan was confirmed on November 16, 2004, and it provided for monthly payments in the amount of $516.00 per month. *See* Dckt. No. 22 (November 16, 2004). Mr. Waldron was involved in an automobile

collision on May 10, 2005, in which he suffered personal injuries that required neck and back surgery. This Court approved a partial settlement of Mr. Waldron's claims that arose from his personal injuries.[3] *See* Dckt. No. 42 (February 28, 2006). In addition, Mr. Waldron is pursuing claims for underinsured motorist benefits against both Georgia Farm Bureau and Selective Insurance Company.[4] At the August 9, 2006, hearing, the Debtors sought authority to settle those claims without further Court order and a determination by this Court that any proceeds from those settlements are not property of the Debtors' bankruptcy estate. The Chapter 13 Trustee contends that since the claim did not exist at the time the Debtors' Plan was confirmed, the proceeds should remain estate property.

## CONCLUSIONS OF LAW

There are two Code provision that most directly impact this issue. The first is 11 U.S.C. § 1306(a)(1),[5] which provides that "all property of the kind specified in [Section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted" is property of the estate. The second is Section 1327(b),

---

[3] The settlement of the personal injury claims was for $25,000.00. One-third of that amount was disbursed to pay the Debtors' personal injury attorney's fees and expenses. The rest of the settlement was disbursed to the Debtors in partial satisfaction of their statutory exemption, which was $10,000.00 for each of the Debtors.

[4] The Debtors have made a claim against Georgia Farm Bureau in the amount of $100,000.00. Selective Insurance Company has indicated that the Debtors have $1,000,000.00 in coverage but has not made any settlement offer. Mr. Waldron is also pursuing a workers' compensation claim against Boaen Mechanical, his employer at the time of the automobile collision. Under Georgia law, however, any proceeds from that claim do not constitute property of the Debtors' bankruptcy estate and are beyond the jurisdiction of this Court. *See* O.C.G.A. § 34-9-84 ("No claim for [workers'] compensation under this chapter shall be assignable, and all compensation and claims therefor shall be exempt from all claims of creditors."); In re Flowers, Case No. 96-21061, Dckt. No. 25 (Bankr. S.D. Ga., August 21, 1997)(Davis, J.).

[5] Hereinafter, all Section references are to Title 11 of the United States Code.

✎AO 72A
(Rev. 8/82)

which states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." In support of their contentions that they are entitled to all the net proceeds from the personal injury settlements, the Debtors point to the seminal decision of Telfair v. First Union Mortgage Corp., 216 F.3d 1333 (11th Cir. 2000). In that case, the Eleventh Circuit Court of Appeals adopted what it termed the "estate transformation approach" in construing Sections 1306(a) and 1327(b).

In reaching its decision, the Eleventh Circuit in Telfair found that courts had adopted three different approaches to resolve the tension between Sections 1306 and 1327. 216 F.3d at 1340. The estate termination approach provides that all property of the estate becomes property of a Chapter 13 debtor upon confirmation and ceases to be property of the estate. Id. The estate preservation approach provides that all property of the estate remains property of the estate until a Chapter 13 case is closed, dismissed, or converted. Id. Describing the third approach as a compromise, the Eleventh Circuit chose to adopt the estate transformation approach. In explaining its choice, the court cited with approval the opinions of my colleague Judge John S. Dalis in In re McKnight, 136 B.R. 891, 894 (Bankr. S.D. Ga. 1992), and the Seventh Circuit Court of Appeals in In re Heath, 115 F.3d 521, 524 (7th Cir. 1997). Under the estate transformation approach, "while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation *returns so much of that property* to the debtor's control *as is not*

*necessary* to the fulfillment of the plan." Telfair, 216 F.3d at 1340 (quoting In re Heath, 115

F.3d at 524) (emphasis added). The implications of the Telfair decision for the present cases

are clear. When the Debtors' Chapter 13 Plans were confirmed, the only property that

remained property of the estate at that moment included that portion of their post-petition

earnings that were necessary to the "fulfillment of the plan."


*I. Has the Eleventh Circuit extended the Telfair rule to post-confirmation assets?*

The Debtors rely upon two subsequent Eleventh Circuit decisions that have

analyzed the nature of assets acquired post-petition. In Witko v. Menotte (In re Witko), 374

F.3d 1040 (11th Cir. 2004), the court concluded that a post-petition malpractice cause of

action held by the debtor was not property of the bankruptcy estate. However, because the

debtor's Chapter 13 case had been converted to Chapter 7, the court applied only Chapter 7

principles, including Section 541. It did not apply Sections 1306 and 1327, and it did not rely

upon or cite Telfair. In Muse v. Accord Human Resources, Inc., 129 Fed. Appx. 487 (11th

Cir. 2005), the debtor filed a Chapter 13 case in November 1997, and his plan was confirmed

in April 1998. After confirmation, the debtor filed an action under the Fair Labor Standards

Act against the defendants seeking to recover unpaid overtime wages incurred between

January 2000 and September 2002. As a result, the debtor's wage claim arose both post-

petition and post-confirmation. After the defendants argued that the debtor was judicially

estopped from asserting the wage claim because he had failed to amend and list it in his

bankruptcy schedules, the district court granted their motion for summary judgment. The

Eleventh Circuit reversed.

Muse cited with approval the decisions of In re Carter, 258 B.R. 526 (Bankr. S.D. Ga. 2001) and In re Ross, 278 B.R. 269 (Bankr. M.D. Ga. 2001), in which bankruptcy courts in this state determined that post-confirmation causes of action were not part of the debtors' bankruptcy estate, the debtors had no duty to amend their schedules to reveal them, and therefore, judicial estoppel did not bar the debtors from recovering in a personal injury forum for the damages accrued or sustained post-confirmation.  Based on its analysis of Telfair, Carter, and Ross, the Eleventh Circuit in Muse held that because the debtor's unpaid wage claim accrued post-confirmation and "*there [was] no assertion that it was necessary for the plan*," the wage claim was not property of the debtor's estate, he had no duty to disclose it, and he was not judicially estopped from bringing an action to recover damages for it.  129 Fed. Appx. at 490 (emphasis added).

Although Muse is a decision of the Eleventh Circuit, it is not binding in this matter.  First, it was not selected for publication in the Federal Reporter.  Therefore, pursuant to Eleventh Circuit Rule 36-2, Muse is not considered binding precedent but may be cited as persuasive authority.  Second, the issue of whether the post-petition cause of action was "necessary" for the debtor's plan was not raised in Muse.  Thus, Telfair's adoption of the estate transformation approach has not been applied in a binding opinion to an asset acquired post-confirmation in a Chapter 13 case, such as the causes of action in the cases now before

AO 72A
(Rev. 8/82)

this Court.

While Telfair was applied to post-confirmation causes of action in Muse, Carter and Ross, none of these cases are persuasive in light of Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002), which held that a debtor's failure to amend his bankruptcy schedules to reveal a discrimination lawsuit instituted two years after he filed his bankruptcy case triggered judicial estoppel. The Court held that the debtor had a continuing duty to amend his schedules, both after confirmation of his Chapter 13 plan when he filed his lawsuit, and later when his case was converted to Chapter 7. Id. at 1287, 1289. "[The debtor] filed and pursued his employment discrimination claims during the pendency of his Chapter 13 case, but never amended his financial statements to include the lawsuit." Id. at 1287-88. Further, after converting to Chapter 7, "he once again failed to disclose the pending lawsuit to the bankruptcy court." Id. at 1288. These conclusions clearly reveal that extending Telfair's vesting rule to post-confirmation assets is tenuous at best.

While Burnes does not articulate the impact of its ruling on Telfair, it could only have concluded that the debtor's schedules must be amended if it believed that post-confirmation causes of action remain estate property. Otherwise, the failure to amend to reveal those assets could hardly set the stage for a judicial estoppel attack. *See also* Ajaka v. BrooksAmerica Mortgage Corp.,453 F.3d 1339, 1345 (11th Cir. 2006)(reaffirming Burnes's continuing duty to amend standard in the context of the post-confirmation discovery

of a pre-petition cause of action).

## II.  What does *Telfair* require in the post-confirmation period?

It goes without saying that Telfair is binding on this Court.  Nevertheless, I find the facts in the cases before me to be materially distinguishable and reach a conclusion different than that urged by the Debtors, based on a close reading of Telfair, and in light of Burnes.  Telfair did two things: (1) it acknowledged the obvious, that upon filing a bankruptcy petition, all of a debtor's property comes under the control of the bankruptcy court as estate property; and (2) that confirmation of a Chapter 13 plan *returns* all of *that* property to the debtor unless it is "necessary to the fulfillment of the plan." 216 F.3d at 1340 (emphasis added).

The issue in Telfair was whether a creditor's post-confirmation assessment of fees against the debtor's mortgage loan account violated the automatic stay because, the debtor argued, the loan payments that were applied to the payment of those fees were property of the bankruptcy estate.  The debtor's earnings, the source of the mortgage loan payments, became estate property at filing.  The court held, however, that "so much of *that* property" as was not necessary to the fulfillment of the debtor's plan vested in the debtor, i.e., was returned to the debtor's control.  Id. at 1340.  As a result, no stay violation occurred. The court stated that under the estate transformation approach, "while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy

court, the plan upon confirmation *returns* so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." Id. (emphasis added). Thus, only property necessary for the execution of the plan is viewed as "*remaining*" in the estate following confirmation. Id. (emphasis added).

This language, primarily the use of the words "returns" and "remaining," illustrates that when properly read, Telfair ruled solely on property that existed, and had been revealed, at or before the confirmation of the debtor's Chapter 13 plan. In Telfair, "only the amount [of the debtor's earnings] required for the plan payments remained property of the estate." Id. However, the regular loan payments made outside the plan were not necessary for the fulfillment of the debtor's plan, and therefore were not property of the debtor's estate after confirmation. Id. To reiterate: In the present cases, the causes of action were not in existence when the Debtors filed their cases or had their Plans confirmed.

The question remains: Does property that did not exist at confirmation or is acquired afterwards vest in the debtor without court review and approval, automatically and instantaneously, and free of any creditors' claims by virtue of Section 1327 under an extension of the Telfair doctrine to post-confirmation assets? Or does the inference drawn from Burnes that post-confirmation assets are estate property suggest that Telfair is inapplicable to post-confirmation assets? I conclude that post-confirmation assets remain property of the estate.

First, as discussed above, <u>Telfair</u> did not analyze the vesting of property that a debtor acquires post-confirmation, and <u>Burnes</u> points to a different result. Second, <u>Telfair</u> and <u>Muse</u> clearly qualify what vests in the debtor at confirmation with the phrase "not necessary to the fulfillment of the plan." *See* <u>Telfair</u>, 216 F.3d at 1340. As will be discussed in greater detail below, this phrase is a far broader exception to the vesting rule than may appear at first glance.

At confirmation, the court determines what then-existing property is "necessary to the fulfillment of the plan." In the context of property acquired after that date, however, what is necessary to fulfill a Chapter 13 debtor's plan is an open question. Post-confirmation property clearly can be necessary to the fulfillment of a Chapter 13 debtor's plan and would not vest in the debtor in at least two instances. First, if the plan is delinquent and therefore subject to dismissal, post-confirmation assets may be necessary to fulfill the plan by curing these delinquencies. The answer to the question of what assets are "necessary" in even this narrow circumstance must be subject to judicial determination at any relevant post-confirmation hearing. This prevents vesting from occurring on "auto pilot," but only after notice and a hearing.

Second, a debtor's post-petition rights and obligations include both the right to seek a modification of a Chapter 13 plan under certain circumstances as well as the obligation to be subject to a post-confirmation modification under certain circumstances. *See*

✎AO 72A
(Rev. 8/82)

11 U.S.C. § 1329(a). Thus, the concept of what is necessary to fulfillment of the "plan" must be understood in the context of a three to five-year period during which there is a "plan." The plan is proposed at the outset, it is then confirmed, perhaps with pre-confirmation modifications, but it also remains subject to *post*-confirmation modification through Section 1329. Such a modification may be sought by the debtor, Trustee, or a creditor to "increase or reduce" the amount of payments, and that plan, as modified, becomes the "plan." That plan must satisfy the criteria listed in Section 1325(a), which include the requirements that the plan be proposed in good faith, and that the value of the property that unsecured creditors will receive under the plan is not less than the amount that would be paid in a Chapter 7 liquidation. *See* 11 U.S.C. §§ 1325(a)(3) and (4).

Properly understood, the Telfair qualification that estate property includes whatever may be necessary to the fulfillment of the plan must therefore include not just property existing at the moment of confirmation but post-confirmation property necessary to fulfill a post-confirmation modified "plan," which may require increased payments to meet Section 1325(a)(4)'s Chapter 7 liquidation test and Section 1325(3)'s good faith test at anytime during the three to five-year period *after* filing. *See* In re Nott, 269 B.R. 250, 255 (Bankr. M.D. Fla. 2000)("When considering confirmation of a modified plan under [Section] 1329, *the test is applied as of the effective date of the modified plan*.")(emphasis added).

*III. Other sources of persuasive authority.*

### A. Section 554

In searching for the proper treatment of assets acquired post-confirmation, I find that Section 554 is instructive. Made applicable to Chapter 13 cases by operation of Section 103(a), Section 554 addresses the methods by which estate property may be abandoned and provides that "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). Property is only abandoned by an affirmative act of a court or trustee if it is "burdensome" or of "inconsequential value and benefit" to the estate. 11 U.S.C. §§ 554(a) and (b). Property can also be automatically abandoned but only if it is "scheduled" and "not otherwise administered at the time of the closing of a case." 11 U.S.C. § 554(c). These provisions of Section 554 tip the scales in resolving the tension between Sections 1306 and 1327 in a case involving post-confirmation assets. They contemplate that property which a debtor duly lists in schedules filed with the bankruptcy court that is "not otherwise administered" by the closing of the bankruptcy case is "abandoned to the debtor." *See* 11 U.S.C. § 554(c). However, property that is not scheduled is never deemed abandoned and remains property of the estate. *See* 11 U.S.C. § 554(d). Therefore, post-confirmation causes of action that become property of the estate under Section 1306 remain property of the estate pursuant to Section 554(d), despite Section 1327, if they are not scheduled and made subject to administration or abandonment.

## B. *Nott*

My conclusion is also influenced by the holding of <u>In re Nott</u>, 269 B.R. 250 (Bankr. M.D. Fla. 2000).  Although it did not cite <u>Telfair</u>, <u>Nott</u> addressed the treatment of a debtor's post-confirmation receipt of an inheritance that totaled between $270,000.00 and $300,000.00.  Noting the same apparent conflict between Sections 1306 and 1327 that the Eleventh Circuit recognized in <u>Telfair</u>, the court in <u>Nott</u> found that "property of a chapter 13 estate that is in existence and disclosed as of the date of confirmation vests in the Debtor pursuant to [Section 1327(b)].  Any property acquired post confirmation, however, is property of the estate pursuant to [Section 1306(a)]."  269 B.R. at 257.  Quoting another bankruptcy court opinion, the court in <u>Nott</u> explained how these principles operate in the following way:

> Upon confirmation of a Chapter 13 plan, all property of the estate is emptied from the estate and revested in the Debtors under [Section 1327(b)].  Such property is no longer property of the estate.  Immediately after confirmation, the estate begins to be refilled by property acquired by Debtors post-confirmation.  That property is protected by the automatic stay and remains so until the case is closed, converted, or dismissed.
>
> <u>Id.</u> (quoting <u>In re Holden</u>, 236 B.R. 156, 163 (Bankr. D. Vt. 1999)).

In concluding that the post-confirmation inheritance received by the debtor was property of the estate under Section 1306(a), the court noted that:

✎AO 72A
(Rev. 8/82)

> [Section 1306] clearly states that property of a Chapter 13 estate includes "all property of the kind specified in [Section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." Congress easily could have added "confirmation of the plan" to this list of events if it had intended that property acquired by the debtor after confirmation of the plan not be property of the estate.

> In re Nott, 269 B.R. at 257.

*See also* Barbosa v. Soloman, 235 F.3d 31 (1st Cir. 2000); In re Fisher, 203 B.R. 958 (N.D. Ill. 1997; In re Drew, 325 B.R. 765 (Bankr. N.D. Ill. 2005). As previously discussed, Telfair did not involve a situation in which the Eleventh Circuit examined the impact of Sections 1306 and 1327 on property that a Chapter 13 debtor *acquired post-confirmation*. Rather, the court in Telfair addressed an assessment of attorney's fees against an escrow account, funded by the debtor's earnings, that was in existence at the time of confirmation. Cases such as Nott focus on the questions surrounding what a court should do with property that a Chapter 13 debtor acquires post-confirmation and that was not in existence or disclosed at the time of confirmation. The rationale of cases such as Nott does not violate the estate transformation approach adopted by Telfair,[6] especially in light of Burnes.

## CONCLUSION

For the foregoing reasons, I conclude that post-confirmation assets,

---

[6] It is noteworthy that Drew reached a similar conclusion using similar rationale as Nott. The bankruptcy court that decided Drew is in the Seventh Circuit, the same circuit that produced Heath, which Telfair cited as support for its adoption of the estate transformation approach.

including a debtor's personal injury causes of action, become property of the estate under

Section 1306 and are not deemed to be retroactively vested in the debtor as of confirmation

by operation of Section 1327.  Rather, they must be scheduled so that the Trustee's or a

creditor's right to seek modification is a meaningful right.  If they are not scheduled, they

remain property of the estate pursuant to Section 1306 and 554(d),[7] under a close reading of

what <u>Telfair</u> requires and what <u>Burnes</u> strongly implies.


## O R D E R

IT IS THEREFORE ORDERED in the case of Mildred A. Harvey that the

balance of settlement proceeds, after payment of counsel's fees and expenses, and payment

to the Debtor of her claimed exemption, will be paid to the Chapter 13 Trustee and held

subject to further administration and further order of Court, and;


IT IS FURTHER ORDERED in the case of Michael and Barbara Waldron

that upon the Motion to Determine if Settlement Funds are Part of the Bankruptcy Estate, IT

IS ORDERED that (1) Workers Compensation Benefits are not part of the bankruptcy estate,

and (2) the Debtors' underinsured motorist claims remain estate property, subject to Court

---

[7] Under Section 1329(a), a Chapter 13 plan may be modified at any time "after confirmation of the plan *but before the completion of payments under such plan.*" 11 U.S.C. § 1329(a) (emphasis added).  Thus, while unscheduled or undisclosed property will remain property of the estate, the Trustee and creditors have only until the completion of payments under a Chapter 13 debtor's plan to seek a modification.  *See* In re Farmer, 324 B.R. 918, 923 (Bankr. M.D. Ga. 2005).  This limitation and the continuing power of the court to abandon burdensome assets under Section 554 or to abstain from entertaining certain types of disputes under 28 U.S.C. § 1334(c) will likely allay the concerns of some courts that an expansive view of what is property of the estate will result in "adjudicating a multitude of petty disputes" or subjecting debtors to an inference that they are incompetent to manage their affairs.  Heath, 115 F.3d at 525; *see also* In re Frausto, 259 B.R. 201, 214-15 (Bankr. N.D. Ala. 2000). However, how this all unfolds is for another day.

approval and further administration by the Chapter 13 Trustee.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 31st day of August, 2006.